John Roy HARPER, II, et al.,
Plaintiffs,

v.

Richard KLEINDIENST et al.,
Defendants.

Civ. A. No. 1607-72.

United States District Court,
District of Columbia.

May 16, 1973.

J. Roger Wollenberg, Max O. Truitt, Jr., Timothy N. Black, Washington, D. C., for plaintiffs; Armand Derfner, Lawyers Committee for Civil Rights Under Law, Jackson, Miss., of counsel.

Harlington Wood, Jr., Asst. Atty. Gen., Harold H. Titus, Jr., U. S. Atty., Harland F. Leathers, Jeffrey Axelrad, Attys., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM ORDER

JUNE L. GREEN, District Judge.

This matter is before the Court on cross-motions for summary judgment and defendants' motion to dismiss. Plaintiffs, representing a class of black residents and registered voters of certain counties of South Carolina which are included in multi-member state Senate districts subject to Act 1205 of the South Carolina General Assembly, contend that the Attorney General of the United States did not properly perform his statutory duty pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c (hereinafter Section 5). Section 5 provides that a state or political subdivision (South Carolina is covered by the Act. 30 Fed.Reg. 9897 (Aug. 7, 1965)) may not lawfully enforce a "voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964", unless it either obtains a declaratory judgment from the United States District Court for the District of Columbia that the submitted law "does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color", or unless the voting change "has been submitted . . . to the Attorney General and the Attorney General has not interposed an objection within sixty days after such submission".

In November 1971, Act No. 932 of the South Carolina General Assembly, which created alternate plans for the reapportionment of the South Carolina Senate, was enacted. The Act provided for the establishment of many multi-member Senate districts and also provided for a "numbered post" system. (That is, designation of each office as a separate numbered office). As a result of this enactment, two suits were instituted; one by the Attorney General of South Carolina to test the Act's constitutionality under the Fourteenth Amendment, the second by plaintiff Harper and others attacking Act 932 as violative of the Fourteenth and Fifteenth Amendments and Section 5 of the Voting Rights Act. During the pendency of these lawsuits, Act 932 was submitted to the Attorney General for review pursuant to Section 5 of the Voting Rights Act. The Attorney General responded, by letter dated March 6, 1972, stating that an objection would be entered because:

"Our analysis of recent federal court decisions dealing with issues of this nature, and to which we feel obligated to give great weight, leaves us unable to conclude, with respect to these plans, that the combination of multi-member districts, numbered posts, and a majority (run-off) requirement would not occasion an abridgement of minority voting rights in South Carolina." [Complaint, Exhibit 1]

Trial of the above lawsuits resulted in a finding by a South Carolina three-judge district court that Act 932 was unconstitutional under the Fourteenth Amendment, but not violative of the Fifteenth Amendment. Noting that it lacked jurisdiction, the Court declined to act on the Section 5, Voting Rights Act, claims. The Court concluded that South Carolina should enact equitable reappor-

tionment legislation and submit a new plan for the Court's review. Twiggs v. West, Civ.No. 71–1106 (D.S.C. April 7, 1972).

Alternate plans were devised and Act 1205 of the South Carolina General Assembly was signed into law May 6, 1972. Plan A of Act 1205 provides for more even distribution of voting population among districts, but retains those aspects previously found objectionable by the Attorney General; that is, more multi-member districts and a "numbered post" system. The state submitted this new plan to the South Carolina District Court which, without opinion, found Plan A of Act 1205 to be constitutional. Twiggs v. West, *supra*, Order of May 23, 1972.

Again, the voting changes envisioned necessitated a Section 5 clearance. South Carolina submitted Act 1205 to the Attorney General on May 12, 1972. Additional information was requested from the state, and upon its receipt and review, the state was notified on June 19, 1972, that its submission was complete. On June 30, 1972, the Attorney General issued a letter objecting to Section 3 of Act 1205 which provided for numbered seating in the State House of Representatives, but declined to interpose an objection to Plan A of Act 1205, relating to the State Senate. In explanation of his inaction, the Attorney General stated he was "constrained to defer to the . . determination of the three-judge District Court". Complaint, Exhibit 5.

■ The sole issue in this case is whether the Attorney General has fulfilled his duties under Section 5 of the Voting Rights Act. Plaintiffs contend, *inter alia*, that the Attorney General failed to make a Section 5 determination as to whether Plan A of Act 1205 has the purpose or effect of denying or abridging the right to vote on account of race or color and that defendants' reliance on

the South Carolina three-judge court decision is immaterial to a finding of Section 5 compliance because that Court, by its own admission, lacked jurisdiction to make such a determination.

The defendants argue, *inter alia*, that the Attorney General's decision is inherently discretionary and therefore not subject to review. Defendants further claim that the action should be dismissed for failure to join local state officials as indispensable parties. Lastly, defendants urge summary judgment be granted in their favor because the action was untimely filed (i. e., after expiration of the 60 day period in which the Attorney General may enter an objection under Section 5.)

■ Defendants' last two contentions may be summarily rejected. The test for joinder of indispensable parties under Rule 19 of the Federal Rules of Civil Procedure has not been met. Defendants have not shown that the presence of state officials is necessary to enable complete relief to be accorded or that their absence will subject any party to multiple or inconsistent obligations. The interest which defendants allege local officials must be present to protect is the lawfulness of the voting changes; such interest is not at stake in this suit. The relief sought by plaintiffs "is limited to that necessary to cause the Attorney General properly to fulfill his function under the Voting Rights Act by making a determination as to whether the changes in question have a discriminatory purpose or effect." (Plaintiffs' Memorandum in Opposition, at 18). This Court is not therefore acting in any way on the lawfulness of voting changes. The local officials retain their ability to defend the issue of lawfulness in the proper forum.[1]

Defendants' contention that this action was untimely filed is similarly without

---

1. On reconsideration by the Attorney General, local officials may supplement any material previously submitted to demonstrate the lawfulness of the changes. If an objection were to issue, local officials, under the Voting Rights Act, have the additional remedy of bringing an action in a three-judge court in the District of Columbia.

merit. On August 11, 1972, this issue was argued at the hearing on plaintiffs' Motion for Interim Relief. At the conclusion of that hearing, the Court found the action timely and so stated in its August 11, 1972, order. The Court will not alter its prior finding. *See also,* Georgia v. United States, 411 U.S. 526, 93 S.Ct. 1702, 36 L.Ed.2d 472 (decided May 7, 1973).

The defendants' most crucial allegation is that the Attorney General's actions under Section 5 are discretionary and not subject to judicial review. This Court might agree with the defendants if the thrust of plaintiffs' complaint were to challenge specific findings made by the Attorney General pursuant to Section 5. However, plaintiffs contend that the Attorney General made no findings at all, or that deferring to the South Carolina Court was tantamount to making no findings.

A party submitting a proposed voting rights change has the option of presenting that change to either the Attorney General or a three-judge district court in the District of Columbia. The designated authority must then review the voting change and determine whether said change has the purpose or effect of denying or abridging the right to vote on account of race or color. Section 5 review is a mandatory duty which must be performed by the designated authority before a proposed voting rights change can be implemented. Perkins v. Mathews, 400 U.S. 379, 385, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971); Evers v. State Board of Election Commissioners, 327 F.Supp. 640 (S.D.Miss.1971); appeal dismissed, 405 U.S. 1001, 92 S.Ct. 1281, 31 L.Ed.2d 470 (1972).

In fact, the Attorney General's own regulations indicate that Section 5 review is of a nondiscretionary nature. Those regulations provide, in pertinent part:

"Section 5, in providing for submission to the Attorney General as an alternative to seeking a declaratory judgment from the U.S. District Court for the District of Columbia, imposes on the Attorney General what is essentially a judicial function. . . . The Attorney General shall base his decision on a review of material presented by the submitting authority, relevant information provided by individuals or groups, and the results of any investigation conducted by the Department of Justice. If the Attorney General is satisfied that the submitted change does not have a racially discriminatory purpose or effect, he will not object to the change and will so notify the submitting authority. If the Attorney General determines that the submitted change has a racially discriminatory purpose or effect, he will enter an objection and will so notify the submitting authority. If the evidence as to the purpose or effect of the change is conflicting, and the Attorney General is unable to resolve the conflict within the 60-day period, he shall, consistent with the above-described burden of proof applicable in the District Court, enter an objection and so notify the submitting authority. 28 C.F.R. § 51.19.

Thus, the above regulations impose on the Attorney General the same duty as that imposed on a three-judge District of Columbia court. This duty may not be abdicated. *See* Georgia v. United States, *supra.*

Similarly other courts have found that Section 5 review, when peformed by the Attorney General, is a mandatory function. The Attorney General must make an independent determination whether the proposed change will comply with the law. In fact, courts have remanded matters to the Attorney General when he has failed to complete his duty of independent review. Perkins v. Kleindienst, C.A. 1309–72 (D.D.C. Nov. 2, 1972); Evers v. State Board of Election Commissioners, *supra*; *Contra,* Common Cause v. Mitchell, C.A. 2348–71 (D.D.C. March 20, 1972).

The refusal of the Attorney General to object on the basis that he was "constrained to defer to the . . . determination of the [South Carolina] three-judge District Court" was clearly erroneous. The Voting Rights Act requires the Attorney General to perform an independent quasi-judicial function which he relinquished by deferring to the South Carolina Court. The South Carolina three-judge court has no jurisdiction to consider plaintiffs' substantive discrimination claims under Section 5 and the Attorney General's deferral to it deprives plaintiffs of any review under Section 5.

For the foregoing reasons it is this 16th day of May 1973,

Ordered that defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment is denied, and plaintiffs' Motion for Summary Judgment is granted; and it is

Further ordered that this case be, and hereby is remanded to the Attorney General of the United States for a reasoned decision in accordance with his statutory responsibility. The Attorney General is directed to make the aforesaid determination and report the same to the Court in writing within 60 days from the date hereof. The Court retains jurisdiction of the case pending submission and service of a new decision by the Attorney General and until further order of the Court.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

This cause came on to be heard upon the entire record herein, including defendants' memorandum dated July 16, 1973, in response to this Court's order of May 16, 1973, plaintiffs' Motion for Injunctive Relief to Enforce this Court's Order of May 16, 1973, and the memorandum of the plaintiffs and arguments of counsel with respect thereto. Upon consideration thereof, the Court makes the following findings and conclusions.

*Findings*

1. On May 16, 1973, this Court entered its Memorandum Order (1) concluding, *inter alia*, that defendants may not lawfully defer to the South Carolina district court decision in Twiggs v. West, Civ. No. 72–1106 (D.S.C.1972), as a basis for refusing to object to the voting changes adopted by South Carolina Act 1205, and (2) directing defendants within 60 days to make a reasoned decision in accordance with their statutory responsibility;

2. On July 16, 1973, after denial of defendants' stay motions addressed to this Court and the Court of Appeals, defendants submitted a memorandum in response to this Court's May 16 order. Defendants in that memorandum specifically found Act 1205 to be discriminatory, but failed to object to that Act on the basis of the decision in Twiggs v. West, *supra*; and

3. The defendants represented in open court that if the Attorney General considered Act 1205 without regard to the decision of the Three Judge District Court in Twiggs v. West, he would enter an objection to such Act.

*Conclusion*

In view of defendants' specific finding that Act 1205 is discriminatory, and their failure to identify any valid reason for not objecting, an objection to that statute is required by Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c.

Now, therefore, it is by the Court this 19th day of July 1973,

Ordered

1. The Attorney General shall consider Act 1205 without regard to the decision of the Three Judge District Court in Twiggs v. West;

2. Jurisdiction is retained pending further order of the Court; and

3. This order shall not prejudice any right of appeal.